

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| CAMERON RASHAD BLANCHARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:08-CV-02020-LSC |
| | ) | |
| DEER VALLEY HOME BUILDERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, Deer Valley Home Builders, Inc. ("Deer Valley"), on April 1, 2010.  (Doc. 26.)  Plaintiff Cameron Blanchard sued Deer Valley for racial discrimination and retaliation with respect to his termination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981").[1]  (Doc. 1.)  Deer

---

[1] Plaintiff's Complaint also includes a claim under 42 U.S.C. § 1983 ("§ 1983").  This claim is not specifically addressed in either party's summary judgment submission.  "To maintain a 42 U.S.C.A. § 1983 action, the conduct complained of must have been committed by a person acting under color of state law and must result in a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citing *Parratt v.*

Valley moved for summary judgment on all of Plaintiff's claims.  The issues

raised in Deer Valley's motion for summary judgment have been briefed by

both parties and are now ripe for review.  Upon full consideration of the

legal arguments and evidence presented, Deer Valley's motion for summary

judgment will be granted in part and denied in part.

II.    Facts.[2]

Cameron Blanchard ("Blanchard"), an African-American male, began

his employment with Deer Valley in February 2007, as a laborer in the

sidewall department.  Deer Valley, a manufacturer of mobile homes, uses

a production line work design.  In the sidewall department, two four-man

teams build sidewalls for mobile homes.  In order for the production line to

move efficiently, the sidewall department must finish sidewalls in a timely

---

*Taylor*, 451 U.S. 527, 535 (1981), *Scott v. Dixon*, 720 F.2d 1542, 1545 (11th Cir. 1983), *Brown v. Miller*, 631 F.2d 408, 410 (5th Cir. 1980)).  Because there is no allegation or evidence in this case that Deer Valley or its representatives acted under color of state law, Plaintiff's § 1983 claim will be dismissed.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

manner.  This requires teamwork among the employees in the department. In order for the plant to complete the number of mobile home units required, the sidewall department is required to complete six walls in an eight-hour shift.

Tim Gann ("Gann"), Deer Valley's production manager, made the decision to hire Blanchard.  Richard Stewart ("Stewart"), an African-American male, was Blanchard's immediate supervisor.  Blanchard started work on a four-man team with three other white men.  After some time, one of the white men was transferred and replaced by Lee Wallace ("Wallace"), an African-American male.  All of the men on the second four-man team in the sidewall department were white.

In an affidavit, Stewart testified that Blanchard had difficulties with the pace of the job, and he told Blanchard many times that he needed to get his job done in eight hours.  (Stewart Aff. at 1-2.)  In Stewart's words, "Blanchard's team was the one that could not get the required sidewalls and marriage walls for 6 floors/day."  (*Id*. at 2.)  Blanchard testified, however, that Stewart never told him he was not satisfied with his work.  According to Blanchard, Stewart told him he did such a good job, he needed "four of

[Blanchard]." (Blanchard Dep. at 137.)  Yet, Blanchard also testified that Stewart often called him a "nigger." (*Id*. at 138-45.)

The sidewall employees worked overtime to meet their quota requirements, and the number of overtime hours increased.  Frustrated, Gann called a meeting in the sidewall department and told the employees that if they could not get their job done, they would be replaced.  When Gann asked why work was held up, Wallace answered that they got a little behind waiting on materials and studs.  Blanchard testified that Gann told Wallace: "well, you can get your stuff and get out of here."  When Wallace protested that they could finish, Gann responded, "no, you can get your shit and get the fuck out of here."  (*Id*. at 134.)  Gann then turned to Blanchard and asked if he had an excuse.  Blanchard shook his head.

Blanchard says that after Wallace was fired, Stewart told him that Gann wanted to fire Blanchard because he thought Blanchard would testify for Wallace in a lawsuit.  According to Blanchard, Gann started visiting the sidewall department and staring at him for hours a day.  A few days later, in April 2007,  Stewart reminded Blanchard that Gann wanted to get rid of him, told Blanchard he was fired, and showed him a paper that said "failure

to meet quota." (*Id*. at 198-99.)  Blanchard refused to sign the paper.  Later that day, Blanchard met with Stewart and Ben Langley ("Langley"), the Director of Employee Relations.   Blanchard testified that during that meeting, he was shown the "failure to meet quota" paper again, and this time someone had added "missed too many days."  (*Id*. at 207.)  When Blanchard protested, Langley checked and confirmed that Blanchard had missed three days and they were all excused.  (*Id*. at 207-08.)

Defendant has a different account of Blanchard's termination.   In affidavits, Gann and Stewart say that they made the decision together to fire Blanchard "for failure to make quota and attendance."  (Stewart Aff. at 2[3]; Gann Aff. at 2.)  Stewart confirms that he met with Blanchard and Langley, and says he "again told Mr. Blanchard why he was terminated.  Mr. Blanchard was informed of the number of days that he had worked over since being hired.  Simply put, Mr. Blanchard did not have the willingness to work in any department for this company."  (Stewart Aff. at 2.)  Langley writes the following in his affidavit: "Because of Mr. Blanchard's inability to

---

[3]Stewart's affidavit states that he "memorialized the termination in Employee Notice Form attached hereto as Exhibit 'A'."  (Stewart Aff. at 2.)  No such notice is attached.

make the quota, which was the construction of enough sidewalls and marriage walls for six floors per day, Mr. Blanchard was terminated.  In addition, Mr. Blanchard was informed that the fact that he was a probationary employee and that he had missed some time from work, were also reasons for his termination."  (Langley Aff. at 1.)  The remaining employees on the two teams in the sidewall department were white, and it is undisputed that they were neither disciplined nor terminated for failure to meet quota.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting

evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

    A.    Race Discrimination in Termination.

Blanchard argues that he was illegally terminated due to his race.  He contends that Stewart's regular use of the word "nigger"; Gann staring at him and not other white employees; Gann questioning him after firing another African-American employee; and Stewart saying Gann believed Blanchard would testify for the fired African-American employee constitute direct evidence of race discrimination.  (Doc. 30 at 17-21.)

The Eleventh Circuit Court of Appeals defines direct evidence of discrimination as evidence that "reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quotations omitted).  "In other words, the evidence must indicate that the complained-of employment decision was *motivated* by the decision-maker's [illegal animus]." *Id*. at 1358-59 (italics in original). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race] will constitute direct evidence of discrimination." *Id*. at 1359 (quotations omitted).  "[R]emarks by non-

decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (citing *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990)); *see also Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002).  This is a "rigorous standard," and it is clear that Plaintiff's evidence does not qualify.  *Damon*, 196 F.3d at 1359. Most of the alleged discriminatory statements and actions were not associated with the decision to terminate Blanchard's employment, and all require the Court to make inferences regarding Stewart and Gann's real motivations. *Id.* (citing *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 (11th Cir. 1997) (holding that evidence which suggests, but does not prove, a discriminatory motive, is circumstantial evidence by definition)); *see also Standard*, 161 F.3d at 1330 ("Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption.").

Because Blanchard has not presented direct evidence of race discrimination in connection with his termination, we analyze his claim using the analytical framework established by the U.S. Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Standard*, 161 F.3d at 1333.   First,  the  plaintiff  must  establish  a  prima  facie  case  of discrimination.   A  plaintiff  establishes  a  prima  facie  case  of  race discrimination by showing: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Id.* (citing *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994)).

Once a plaintiff has established a prima face case of discrimination, "the  defendant  can  rebut  by  offering  a  legitimate,  non-discriminatory reason for the allegedly discriminatory act." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).   This burden is "exceedingly light . . . .  At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Id.* (quoting *Perryman v. Johnson*

*Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)).  "If the defendant successfully rebuts the plaintiff's prima facie case, 'the presumption of discrimination is eliminated.'" *Id.* (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).  In order to survive summary judgment, the plaintiff must then "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Id.* (quoting *Chapman*, 229 F.2d at 1024.)

With regard to Plaintiff's prima facie case, Deer Valley concedes that Blanchard belongs to a racial minority, he was subjected to adverse job action when his employment was terminated, and he was qualified to do the job.  (Doc. 27 at 14.)  Defendant disputes, however, that Blanchard has adduced evidence that similarly situated white employees were treated more favorably.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are

similarly situated in all relevant respects." *Holifield*, 115 F.3d at 1562; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.), *reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.*  "The most important factors in the disciplinary contexts are the nature of the offenses committed and the nature of the punishments imposed." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), *cert. denied*, 535 U.S. 1013 (2002) (ellipses omitted).  "In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Id.* (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)); *see also Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) (reaffirming the "nearly identical" requirement despite one panel's conclusion that only "similar" misconduct is required). It is "require[d] that the quantity and quality of the comparator's

misconduct be nearly identical." *Maniccia*, 171 F.3d at 1368.  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115 F.3d at 1562.

Deer Valley maintains that Blanchard was terminated as an introductory or probationary employee because of his productivity and absenteeism.  (Doc. 27 at 18-19, 21.)  Defendant contends that no non-minority employees were in nearly identical circumstances.  Productivity and absenteeism, however, are Deer Valley's asserted legitimate, nondiscriminatory reasons for Blanchard's discharge.  In order to determine whether similarly situated non-minority individuals were treated more favorably in this case, the Court is required to examine those reasons more closely.

In his deposition testimony, Blanchard disputes that he was a probationary employee at the time of his termination[4], disputes that he was

---

[4]Evidence in the record indicates that the first sixty days of employment is an "introductory period" or "trial period."  (Doc. 28, Ex. F; Doc. 30, Def. Ex. 15.)  It is not clear whether the sixty days runs continuously from the date of hire or includes only days worked.  The handbook, dated as "effective February 1, 2004," states:

> The first 60 days of employment is considered a trial period
> for new employees.   This period will be considered as a

ever warned about his productivity, and argues that he did not violate any

attendance policies because his absences were excused.  "[O]ur inquiry is

limited to whether the employer gave an honest explanation of its

behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.

1991).  However, the employer's explanations in this case lack clarity and

detail.  In short affidavits, the undisputed decisionmakers, Stewart and

Gann, write that they decided it was necessary to terminate Blanchard for

"failure to make quota and attendance."  (Stewart Aff. at 2; Gann Aff. at

_____

> training and evaluation period.  During this period the
> supervisor will be keeping factual records on the employee's
> reliability, attitude, adaptability, quality of work,
> performance, and ability to work well with others.  A review
> showing unsatisfactory performance, poor attitudes, violation
> of plant policies or safety regulations, absenteeism, or other
> poor work habits will result in your immediate dismissal.
> Introductory employees will be allowed up to 3 occurrences
> of absenteeism or tardiness.  Introductory employees may be
> dismissed if they exceed the maximum allowed time.

(Doc. 30, Def. Ex. 15 at 2.)  No reviews have been submitted to the Court.  Blanchard
submitted his application to Deer Valley on February 5, 2007.  His time records show he
worked on February 6, 2007, and Langley's affidavit states he was terminated on April
10, 2007, sixty-three days later.

Blanchard also signed an "Attendance Policy Acknowledgment," dated March 16,
2007, which reads:

> I understand that the first 60 days of employment with Deer
> Valley is considered an introductory period.  I am to be at
> work everyday, on time and work all hours assigned to me by
> my supervisor.  Any violation of the attendance policy during
> the introductory period may result in automatic dismissal.

(Doc. 28, Ex. F.)

2.)  Gann's affidavit adds the word "continued" before "failure."  (Gann Aff. at 2.)  Neither mentions they considered Blanchard's alleged probationary status.  Neither explains the problem with Blanchard's attendance.  There is no testimony that he was terminated for missing one day of work, four days of work, or leaving work early.  There is no evidence that Blanchard was scheduled to work specific days or hours and did not do so.  There is no explanation of the attendance policy for probationary employees and the effect of excused absences.   There is no record that Blanchard was counseled for his attendance prior to his termination.  Langley's affidavit is also vague regarding the attendance issue, saying only that Blanchard "had missed some time from work."  (Langley Aff. at 1.)

A "defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981).  "This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded 'a full and fair opportunity' to demonstrate pretext."  *Id*.  Moreover, the Court cannot assess whether employees engaged in "nearly identical" conduct without such specificity.

Because Defendant does not proffer evidence explaining the specific problem(s) with Blanchard's attendance, the Court rejects, for the purposes of summary judgment, "attendance" as a legitimate, nondiscriminatory reason for Blanchard's termination, and as an issue for determining whether other employees were "similarly situated" to Blanchard.  The Court also declines to consider Blanchard's alleged probationary status at this stage of proceedings because Deer Valley has not produced any evidence explaining how such status affected the decision to terminate, or that the decisionmakers ever considered that status when they discharged Blanchard.

With regard to the quota issue, it is undisputed that the quota for the *entire sidewall department* was six walls in an eight-hour shift.  (Doc. 27 at 3, ¶ 7; Stewart Aff. at 1.)  Deer Valley has not adduced any evidence of an individual quota for employees.  If the sidewall department failed to meet quota, then the sidewall employees, as members of a team, failed to meet quota.  Blanchard was fired for "failure to meet quota," and the remaining white employees were neither disciplined nor terminated.  A reasonable jury could conclude that similarly situated non-minority employees were treated more favorably and Defendant's explanation that Blanchard was fired for

"failure to meet quota" is pretext for racial discrimination.  Therefore, summary judgment will be denied with regard to Plaintiff's race discrimination claim.

      B.    Retaliation.

Blanchard also contends that his termination from Deer Valley constitutes unlawful retaliation.  In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse . . . action; and (3) that there is some causal relationship between the two events." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997); *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1120 n.10 (11th Cir. 2001).  Recently, the U.S. Supreme Court clarified that a plaintiff does not need to suffer employment-related adverse actions.   Rather, federal anti-retaliation provisions encompass any employer actions that would be "materially adverse to a reasonable employee or job applicant." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006).  There is no dispute, however, that Blanchard's discharge is sufficient to meet the second prong of his prima facie case with regard to his retaliation claim.

Deer Valley maintains that Blanchard cannot establish a prima facie case of retaliation because he did not engage in statutorily protected expression. Blanchard admits he never complained to anyone at Deer Valley about race discrimination prior to his termination, but he argues that Gann retaliated against him because he thought Blanchard would testify for Wallace in a lawsuit. In support of his claim, Plaintiff cites *Crawford v. Metropolitan Government of Nashville and Davidson County*, 129 S. Ct. 846 (2009), which held that Title VII's anti-retaliation provisions covered an employee who acted as a witness in a sexual harassment investigation. In *Crawford*, the Supreme Court noted that "[t]he opposition clause makes it 'unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by this subchapter.'" *Id*. at 850 (quoting 42 U.S.C. § 2000e-3(a)). The Court concluded that the witness employee opposed sexual harassment by communicating her belief, even if that belief was extracted through an investigation and not initially volunteered by the employee, that the employer had engaged in a form of employment discrimination. *Id*. at 851-53. Other courts have also held that "[a]ction taken against an individual

in *anticipation* of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact." *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993) (emphasis added).

In reality, Wallace never initiated a lawsuit against Gann or Deer Valley, Wallace never filed a complaint with the EEOC, and Plaintiff never testified or gave a witness statement for Wallace.  Assuming, however, that Blanchard's testimony about work rumors and what Stewart told him Gann "believed" or "thought" is true and admissible for the purposes of summary judgment, nothing in the record references a *discrimination* lawsuit.  There is no evidence that either decisionmaker knew or believed Wallace's purported legal action involved allegations of race discrimination, or any prohibited activity under Title VII or § 1981.  And, there is no evidence that either decisionmaker anticipated Blanchard's testimony would communicate his belief that Deer Valley engaged in any form of employment discrimination.  Without such evidence, Blanchard has not shown he engaged in statutorily protected expression for purposes of establishing a prima facie case of retaliation, and Deer Valley is entitled to summary judgment on his

retaliation claim.

V.   Conclusion.

For the reasons set forth above, Deer Valley's motion for summary judgment will be granted in part and denied in part.  A separate order will be entered.

Done this <u>3rd</u> day of <u>June 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297